UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Sasha Wenzel and Eric Daneault

   v.                                     Civil No. 16-cv-481-LM
                                        Opinion No. 2018 DNH 084
National Creditors Connection, Inc.
and Carrington Mortgage Services


# O R D E R

    Sasha Wenzel and Eric Daneault brought suit in New
Hampshire Superior Court, Hillsborough County against defendants
Carrington Mortgage Services ("Carrington") and National
Creditors Connection, Inc. ("National Creditors"), alleging that
Carrington's unlawful conduct in mishandling their loan payments
forced them into default on their mortgage agreement.
Plaintiffs also alleged that Carrington and National Creditors
violated federal and state law in their efforts to collect on
plaintiffs' debt.  Defendants removed the case to this court and
move for summary judgment on all of plaintiffs' claims.
Plaintiffs object.


**STANDARD OF REVIEW**

    A movant is entitled to summary judgment if it "shows that
there is no genuine dispute as to any material fact and [that
it] is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

"On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'"  OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the moving party provides evidence to show that the nonmoving party cannot prove a claim, the burden shifts to the nonmoving party to show that there is at least a genuine dispute as to a factual issue that precludes summary judgment.  Woodward v. Emulex Corp., 714 F.3d 632, 637 (1st Cir. 2013).

Under the Local Rules of this district, "[a] memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried."  LR 56.1(a). "A memorandum in opposition to a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require

a trial." LR 56.1(b). Importantly, "[a]ll properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." Id.

**BACKGROUND**[1]

On December 17, 2007, plaintiffs executed a promissory note in favor of SurePoint Lending abn First Residential Mortgage Network, Inc. ("SurePoint") in exchange for a loan in the amount of $235,480. The note was secured by a mortgage on plaintiffs' home in Manchester, New Hampshire.

Plaintiffs timely submitted their first four monthly payments due under the note. They failed to make their fifth monthly payment, or any payment due under the note thereafter.

On April 22, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS"), as SurePoint's nominee, assigned the mortgage to BAC Home Loans Servicing, L.P. ("BAC"). On February 2, 2012, MERS, as BAC's nominee, assigned the mortgage to Bank of America, N.A. ("Bank of America"). Bank of America was also the servicer of the loan.

---

[1] The facts are summarized from defendants' statement of material facts offered in support of their motion for summary judgment, see LR 56.1, and from exhibits included with the parties' filings. These facts are not in dispute unless noted.

On December 5, 2012, plaintiffs and Bank of America entered into a loan modification agreement (the "first loan modification agreement"). At that time, plaintiffs were 54 months in arrears on their loan. Plaintiffs made the first 14 payments required under the first loan modification agreement, but, beginning with their payment due on February 1, 2014, they failed to make the next nine payments.

In November 2014, plaintiffs and Bank of America executed a second loan modification agreement. Plaintiffs submitted their first payment under the second agreement on time, but were late on their second payment and fell behind by two months. Since that time, plaintiffs made 33 payments, all of which have been a minimum of 60 days late.[2]

I.   Service Responsibilities Transferred to Carrington

On June 10, 2016, Bank of America sent plaintiffs a notice that servicing responsibilities of their mortgage loan would be transferred to Carrington on July 1, 2016. See doc. no. 1-1 at 16-19. At some point in July, Carrington sent plaintiffs a "Notice of Servicing Transfer." The Notice of Servicing

_____

[2] Wenzel asserts that she made all payments after the November 2014 payment "over the phone" after receiving a "regular phone call" from Bank of America. Doc. no. 41-1 at ¶ 3. It is not clear from the record precisely how the payment was made "over the phone."

Transfer is dated July 11, 2016, and Carrington asserts that it mailed the notice on or around that date. Wenzel states in an affidavit that she did not receive the notice until July 26, 2016. See doc. no. 41-1 at ¶ 5.

On July 26, 2016, Wenzel called Carrington, explained to a representative that she had just received paperwork from Carrington indicating that it was her new loan servicer on that same date, and attempted to make a monthly payment over the phone. Wenzel explained to the representative that she had been two months behind in her mortgage payments "forever" but that Bank of America always allowed her to make a one-month payment over the phone.[3] The representative informed Wenzel that because her paperwork showed her as being at least two months behind on her payments (for May and June 2016), Carrington could not accept one month's payment over the phone, and she would need to mail the payment or submit it online. During the call, the representative told Wenzel that she needed to update her contact information, including her telephone number. Wenzel provided

---

[3] It is undisputed that both Wenzel and Daneault are parties to both the note and mortgage. In their communications, however, Wenzel, Carrington, and National Creditors alternate between referring to the loan and mortgage as pertaining to both Wenzel and Daneault or Wenzel only. The parties do not address this issue, and the court notes it here only for the sake of clarity.

her cell phone number, which she stated was her only telephone number.[4]

During that same call, Wenzel told the Carrington representative that the paperwork she had received listed her outstanding balance as $244,672.23, but that she believed this information was incorrect. Wenzel stated that paperwork from Bank of America showed that her outstanding balance was $243,053.15. The representative confirmed that Wenzel's outstanding balance was $243,053.15.

Three days later, on July 29, 2016, Carrington sent plaintiffs a notice of intent to foreclose. The notice stated that Carrington had not received the payment due on May 1, 2016, and that the amount required to cure the delinquency was $5,502.30. See doc. no. 1-1 at 21-23.

Wenzel subsequently mailed in a monthly payment, and Carrington accepted it on August 9, 2016, as plaintiffs' payment for May. Shortly thereafter, Wenzel mailed in a second payment, which Carrington accepted on August 31, 2016, as plaintiffs' payment for June.

At some point, Wenzel sent in a third payment, which she asserts Carrington "initially rejected, and held, before [it was] eventually accepted and cashed." Doc. no. 41-1 at ¶ 8.

_____

[4] Wenzel did not specify that the number she gave was her cell phone number, but rather that it was her only number.

Carrington acknowledges that it accepted Wenzel's July payment on September 30, 2016, and applied it to plaintiffs' outstanding balance.  Plaintiffs have made no further loan payments since that time.

## II.  Debt Collection Efforts

From July 28 through October 11, 2016, Carrington made seven calls on different dates to Wenzel's cell phone. Carrington left two short voicemails on Wenzel's phone, on August 18 and 19.

On August 5, 2016, Carrington provided plaintiffs' address, but not Wenzel's phone number, to National Creditors.  That same day, National Creditors sent a Debt Validation Notice to Wenzel at plaintiffs' address.  The notice advised that National Creditors was acting on behalf of Carrington, and stated that Carrington's records showed that Wenzel owed a debt to Bank of America of $7,336.40 as of August 5, 2016.  The letter advised Wenzel that unless she disputed the validity of the debt within 30 days of receipt of the notice, National Creditors would assume the debt to be valid.  Wenzel did not contact National Creditors to dispute the debt.

On August 8, 2016, National Creditors, on Carrington's behalf, sent a field agent to plaintiffs' home.  The field agent rang the doorbell and knocked on the door, but no one answered.

The agent left a contact letter in a sealed personal and confidential envelope. The letter, which had Carrington's name and address in the header, stated that plaintiffs owed $7,336.40 as of August 5, 2016, and stated that it "is imperative that you contact a representative at the telephone number listed below immediately upon receipt of this letter." Doc. no. 35-2 at 2. The telephone number listed on the letter was Carrington's contact information. After the August 8, 2016 visit to the home, National Creditors had no contact, by phone or otherwise, with plaintiffs.

## DISCUSSION

Plaintiffs bring seven claims against Carrington only: Violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. (Count I); Negligent Misrepresentation (Count II); Breach of the Covenant of Good Faith and Fair Dealing (Count III); Violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count IV); Two Counts of Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Counts V and VII); and "Standing" (Count IX). They also allege two counts against both Carrington and National Creditors: Violation of the FDCPA (Count VI); and Negligent Infliction of Emotional Distress (Count

VIII).  Defendants move for summary judgment on all claims.
Plaintiffs object.

I.  Defendants' Affidavits

    In support of their motion for summary judgment, defendants
submitted affidavits from Elizabeth Ostermann, a Vice President
for Carrington[5] (doc. no. 34) and Mark Hunt, Custodian of Records
and Director of Compliance for National Creditors (doc. no. 35).
These affidavits provide support for the statement of undisputed
facts included with defendants' motion for summary judgment.

    Plaintiffs assert that pursuant to Federal Rule of Civil
Procedure 37(c)(1), the court should not consider these
affidavits because Ostermann and Hunt were not identified in
defendants' initial disclosures, and defendants only disclosed
their identities shortly before the close of discovery.[6]  They
argue that defendants acted in bad faith and that the late
disclosure was highly prejudicial to plaintiffs because they had
no opportunity to depose these witnesses.

---

    [5] Ostermann's affidavit states that her exact title is "Vice
President, Default."  Doc. no. 34 at ¶ 2.

    [6] Rule 37(c)(1) provides, in relevant part: "If a party fails
to provide information or identify a witness as required by Rule
26(a) or (e), the party is not allowed to use that information
or witness to supply evidence on a motion . . . unless the
failure was substantially justified or is harmless."

Plaintiffs fail to provide any legitimate basis for their assertion that defendants acted improperly or in bad faith or that plaintiffs suffered any prejudice. Although defendants did not identify Ostermann or Hunt in their initial disclosures, they supplemented those disclosures on October 24, 2017.[7] See doc. no. 48-1. Consistent with their pattern during the course of this litigation, plaintiffs could have, but did not, seek to depose either Ostermann or Hunt prior to the close of discovery on November 17, 2017. See doc. nos. 20 & 23 (detailing plaintiffs' failure to seek discovery throughout the litigation).

The case on which plaintiffs rely and attach to their objection, Rigby v. Philip Morris USA Inc. et al., No. 16-16831 (11th Cir. Oct. 23, 2017), does not support their argument. In Rigby, the Eleventh Circuit held that the district court did not abuse its discretion in excluding affidavits offered by plaintiff in his objection to defendants' motion for summary judgment. The Eleventh Circuit noted that plaintiff supplemented his disclosures and identified his witnesses "only after the discovery period had ended and defendants had filed

_____

[7] Under the scheduling order, the parties were not required to serve initial disclosures. See doc. no. 9 at 2, approved as modified in doc. no. 10. Defendants provided disclosures to plaintiffs as a matter of courtesy.

their motion for summary judgment."  Doc. no. 41-2 at 4
(emphasis added).

Here, in contrast, defendants disclosed Ostermann's and
Hunt's names and the topics about which they have knowledge in a
timely fashion.  Plaintiffs had the opportunity to depose these
witnesses, but, consistent with their behavior throughout this
litigation, made no effort to do so.  Plaintiffs' argument that
the court should exclude the affidavits under Federal Rule of
Civil Procedure 37 is unavailing.[8]

II.  RESPA (Count I)

In their complaint, plaintiffs allege that Carrington
violated RESPA, and specifically 12 U.S.C. § 2605, in the
following ways: 1) Carrington did not send plaintiffs a timely
notice of transfer of servicing of the loan; 2) Carrington added
late fees during the 60-day "grace period" after the transfer
date; and 3) Carrington continued to add late fees despite
receiving payments before their due date, and returned
plaintiffs' monthly mortgage payments.  See doc. no. 1-1 at ¶¶
30-35.  Defendants argue that they are entitled to summary
judgment because the evidence in the record shows that

---

[8] Although plaintiffs have failed to put forth a legitimate
basis for excluding Ostermann's or Hunt's affidavits, the court
notes that, with limited exceptions discussed below, plaintiffs
do not dispute the facts set forth in those affidavits.

Carrington did not take any of the actions plaintiffs allege in support of their RESPA claim and that, regardless, there is no evidence that plaintiffs suffered any damages from Carrington's alleged RESPA violations.  See Bulmer v. MidFirst Bank, FSA, 59 F. Supp. 3d 271, 279 (D. Mass. 2014) ("To succeed on a compensatory claim, a plaintiff must demonstrate both a violation of the statute and actual damages caused by the RESPA violation.").  The court addresses each of plaintiffs' allegations below.

A.  Notice of Servicing Transfer

Plaintiffs first allege that Carrington failed to provide timely notice of the transfer of servicing responsibilities of their loan.  Under RESPA, "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer."  12 U.S.C. § 2605(c)(1).  The "notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing the mortgage loan (with respect to which such notice is made)."  Id. at § 2605(c)(2)(A).

Defendants argue that the undisputed evidence in the record shows that Carrington sent plaintiffs the required notice of transfer within 15 days of July 1, 2016, the effective date of

the transfer.  But defendants themselves appear confused as to the date Carrington sent the notice.

The notice of transfer is dated July 11, 2016.  <u>See</u> doc. no. 34-5 at 2-3.  Defendants assert in their memorandum in support of their summary judgment motion that Carrington sent the notice on that same date, relying on Ostermann's affidavit. <u>See</u> doc. no. 33 at 10.  The statement in the affidavit upon which defendants rely, however, merely refers to the date of the letter itself, and does not provide the date that Carrington <u>sent</u> the notice.  <u>See</u> doc. no. 34 at ¶ 14.  Later in their memorandum, defendants state that Carrington mailed the notice of transfer "on or about July 18, 2016"——a date outside of the 15-day deadline.  <u>See</u> doc. no. 33 at 14 ("Indeed, indisputable evidence shows that on or about July 18, 2016, [Carrington] sent Plaintiffs notice to the Subject Property address that the Subject Loan's servicing had been transferred from [Bank of America] to [Carrington].").  Then, in their reply brief, defendants represent that "the Subject Loan's servicing notes unequivocally establish Carrington sent the servicing transfer notice on July 16, 2016, which is fifteen days (15) after the July 1, 2016 effective day of transfer."[9]  Doc. no. 48 at 5.

---

[9] Defendants provided numerous pages of servicing notes with their summary judgment motion.  They do not, however, cite the specific pages of the servicing notes to support this statement.

Even if defendants had settled on a single date that Carrington sent the notice, plaintiffs provide evidence that Carrington failed to comply with the 15-day deadline. On July 26, 2016, Wenzel called Carrington and stated that she received on that date a package from Carrington, which included the notice of transfer. In her affidavit, Wenzel states that she received the notice on July 26, 2016.

On the basis of this conflicting record, a genuine issue of material fact exists as to whether Carrington complied with its obligations under § 2605(c).[10]

B.   Late Fees Within 60 Days of Service Transfer

Plaintiffs next allege that Carrington "failed to treat the Plaintiffs' payments as required by 12 U.S.C. 2605(d) during the 60 day period beginning at the effective date of the transfer." Doc. no. 1-1 at ¶ 32. Because of the confusion that can result when a new loan servicer takes over, RESPA protects debtors who make timely payments to the predecessor servicing company for a

---

[10] Defendants briefly contend in their reply brief that they should be entitled to summary judgment on this portion of plaintiffs' RESPA claim because plaintiffs' allegations concerning the notice of transfer in their complaint suggest that plaintiffs did not receive the notice at all. The court declines to impose such strict pleading requirements on plaintiffs, particularly in light of plaintiffs' discovery responses which make clear that plaintiffs allege they received the required notice in an untimely fashion.

period of 60 days after the transfer.  Plaintiffs' allegation appears to be that Carrington improperly added late fees and/or other fees during that 60-day grace period.

Section 2605(d) provides:

> During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, <u>if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment</u>) before the due date applicable to such payment.

(emphasis added); <u>see also</u> 12 C.F.R. § 1024.33(c)(1).[11]

Plaintiffs do not allege that they made any payment, timely or otherwise, to Bank of America after July 1, 2016.  As a result, there are no facts alleged to support a claim that Carrington violated § 2605(d).  Defendants are therefore

---

[11] Section 1024.33(c)(1), which is part of RESPA's Regulation X and is related to § 2605(d), provides:

> During the 60-day period beginning on the effective date of transfer of the servicing of any mortgage loan, if the transferor servicer (rather than the transferee servicer that should properly receive payment on the loan) receives payment on or before the applicable due date (including any grace period allowed under the mortgage loan instruments), a payment may not be treated as late for any purpose.

entitled to summary judgment on the portion of plaintiffs' RESPA
claim based on § 2605(d).[12]

C.  Refusal of Payments

Plaintiffs allege that Carrington violated RESPA when it
"charged the Plaintiffs late and other fees despite receiving
payments before their due dates" and because Carrington "went so
far as to return the Plaintiffs' payments."  Doc. no. 1-1 at ¶¶
33, 34.  Although plaintiffs do not make clear in their
complaint or their objection to defendants' summary judgment
motion what section of RESPA Carrington purportedly violated,
the undisputed evidence in the record establishes that
Carrington did not take any of the actions alleged.

The evidence in the record shows that Carrington did not
charge plaintiffs fees for payments received before their due
dates because there is no dispute that plaintiffs were in

---

[12] In their objection, plaintiffs appear to contend that
despite the clear language of § 2605(d) and § 1024.33(c)(1), the
court should read RESPA as prohibiting a transferee servicer
from imposing any late fees during the 60-day grace period,
regardless of whether the borrower mistakenly made a payment
during that time to the transferor servicer.  They point to the
following comment in the Bureau of Consumer Financial
Protection's Supplement to Regulation X: "The prohibition in
§ 1024.33(c)(1) on treating a payment as late for any purpose
would prohibit a late fee from being imposed on the borrower
with respect to any payment on the mortgage loan.  See RESPA
section 6(d) (12 U.S.C. 2605(d))."  To the extent plaintiffs
intended to argue that this language is somehow inconsistent
with the plain language of both § 2605(d) and § 1024.33(c)(1),
they offer no support for that contention.

default and were at least two months behind in their payments when Carrington took over servicing their loan.  As Wenzel herself admits in her affidavit, plaintiffs did not make any payments to Carrington prior to their due dates.  See doc. no. 41-1 at ¶¶ 2-8.  In addition, although the complaint alleges that Carrington returned plaintiffs' payments, Wenzel states in her affidavit that all of her payments to Carrington were "accepted and cashed."  Id. at ¶ 8.  Defendants are therefore entitled to summary judgment on this portion of plaintiffs' RESPA claim.

D.    Damages

There is a genuine issue of material fact as to whether Carrington violated RESPA by failing to send plaintiffs a notice of servicing transfer within 15 days of the effective date of the transfer.  A servicer who fails to fulfill its obligations under RESPA may be held liable for "any actual damages to the borrower as a result of the failure," or, "in the case of a pattern or practice of noncompliance," statutory damages.  12 U.S.C. § 2605(f)(1).  Defendants argue that there is no evidence in the record that plaintiffs suffered actual damages.  They further contend that there is no evidence in the record of a pattern or practice of noncompliance.

1.  Actual Damages

In order to recover actual damages under RESPA, a plaintiff must be able to prove "specific damages and identify how the purported RESPA violations caused those damages." Moore v. Mortg. Elec. Reg. Sys., Inc., 848 F. Supp. 2d 107, 122 (D.N.H. 2012) (internal quotation marks and citation omitted). Defendants argue that plaintiffs have failed to allege and cannot prove any damages whatsoever, and certainly none that were caused by Carrington's failure to send a timely notice of transfer. Plaintiffs argue that they "did indeed suffer actual damages in the form of increased costs, fees, and penalties." Doc. no. 41 at ¶ 26.

Viewing the evidence in the light most favorable to plaintiffs, there is a genuine issue of material fact as to whether they suffered pecuniary damages from Carrington's failure to send a timely notice of transfer. Affording plaintiffs every reasonable inference, the evidence shows that Wenzel first received notice of the transfer on July 26, 2016. She immediately called Carrington and a representative informed her that unlike Bank of America, it could not accept a one-month payment over the phone. This caused Wenzel, who suffers from a disability and does not drive, to have to mail her monthly payment, which resulted in Carrington receiving it later than it otherwise would have had it sent a timely notice. There is a

genuine issue of material fact as to whether this delay caused Carrington to add additional fees and costs, and whether it prevented plaintiffs from bringing their account current.

In short, there is a genuine issue of material fact both as to whether Carrington sent a timely notice of transfer and, if not, whether plaintiffs suffered actual damages from Carrington's failure to do so.

### 2. Statutory Damages

Although there is a genuine issue of material fact as to whether plaintiffs are entitled to actual damages, there is no such dispute with regard to statutory damages. As mentioned above, to be entitled to statutory damages, a plaintiff must show that a defendant engaged in a "pattern or practice of noncompliance." § 2605(f)(1).

Plaintiffs allege no facts in their complaint to support a claim for statutory damages. Nor do they point to any evidence in the record to support such a claim. Plaintiffs contend that they will prove that they are entitled to statutory damages because a pattern or practice "will be shown at trial by the testimony of Carrington representatives" and "the data available from the Consumer Financial Protection Bureau." Doc. no. 41 at 8 n.3. Such speculative assertions are insufficient to create a genuine issue of material fact. See, e.g., Croskrey v. Ocwen

Loan Servicing LLC, No. SACV141318DOCDFMX, 2016 WL 3135643, at
*12 (C.D. Cal. June 2, 2016) (granting summary judgment as to
statutory damages under RESPA because plaintiff pointed to no
concrete facts in the record to support that defendants engaged
in a pattern or practice of noncompliance).

For these reasons, defendants are entitled to summary
judgment on plaintiffs' RESPA claim to the extent it seeks an
award of statutory damages.

E.    Summary

Defendants are entitled to summary judgment as to Count I
except to the extent it is based on Carrington's violation of §
2605(c) for failure to send a timely notice of transfer as
discussed above.

III. Negligent Misrepresentation (Count II)

Under New Hampshire law, the elements of a claim for
negligent misrepresentation "are a negligent misrepresentation
of a material fact by the defendant and justifiable reliance by
the plaintiff." Wyle v. Lees, 162 N.H. 406, 413 (2011). In
their complaint, plaintiffs allege that Carrington generally
"made inconsistent, inaccurate, and misleading representations
regarding the mortgage at issue and the payments of the
Plaintiffs." Doc. no. 1-1 at ¶ 43. Defendants argue that

plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine.

The contractual relationship between a lender and a borrower typically precludes recovery in tort.  See Moore, 848 F. Supp. 2d at 133 (citing Wyle, 162 N.H. at 409-10).  This principle, known as the "economic loss doctrine," is premised on the theory that "[i]f a contracting party is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain."  Plourde Sand & Gravel Co. v. JGI E., Inc., 154 N.H. 791, 794 (2007) (internal quotation marks and citation omitted).  Consequently, "the economic loss doctrine bars negligent misrepresentation claims in a traditional borrower-lender contractual relationship."  Mader v. Wells Fargo Bank, N.A., No. 16-cv-309-LM, 2017 WL 177619, at *3 (D.N.H. Jan. 17, 2017); see Julius v. Wells Fargo Bank, N.A., No. 16-cv-516-JL, 2017 WL 1592379, at *4 (D.N.H. Apr. 28, 2017).

The New Hampshire Supreme Court has recognized, however, that "a contracting party may be 'owed an independent duty of care outside the terms of the contract.'"  Moore, 848 F. Supp. 2d at 133 (quoting Wyle, 162 N.H. at 410).  Thus, a claim based on allegations of negligent conduct against a loan servicer acting on a lender's behalf may survive where the borrower can "prove the lender's voluntary assumption of activities beyond

those traditionally associated with the normal role of a money lender." Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759 (1989) (internal quotation marks and citation omitted). However, where a plaintiff alleges that a loan servicer made misrepresentations "in the course of performance of the loan agreement," such allegations are barred by the economic loss doctrine. Frangos v. Bank of New York Mellon for Certificateholders of CWABS, Inc., Asset Back Certificates, Series 2005-AB2, No. 16-cv-436-LM, 2017 WL 4876284, at *2 (D.N.H. Oct. 27, 2017).

Plaintiffs do not dispute that Carrington's alleged misrepresentations were made in connection with the performance of their obligations under the mortgage agreement. Nevertheless, they argue that the economic loss doctrine "has been judicially expanded well beyond its original intent" and that it should be "controlled for the good of society by jurisprudence." Doc. no. 41 at ¶ 30. The court declines plaintiffs' invitation to alter the law and to ignore well-established First Circuit precedent holding that the economic loss doctrine bars negligent misrepresentation claims against loan servicers based on similar facts. See Schaefer v. Indymac Mortg. Servs., 731 F.3d 98, 109 (1st Cir. 2013).[13]

---

[13] Plaintiffs mistakenly assert that their negligent misrepresentation claim should survive because they have shown that Wenzel suffered emotional distress damages. Even if they had made such a showing, emotional distress damages are not

For these reasons, plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine.[14]  Defendants are therefore entitled to summary judgment on Count II.

IV.  Breach of the Covenant of Good Faith and Fair Dealing
     (Count III)

The plaintiffs allege in their complaint that Carrington breached the implied covenant of good faith and fair dealing in the mortgage agreement by "keeping the Plaintiffs uninformed and off track with their loan"; "refusing payments immediately upon a servicing transfer"; and by "ignoring the Plaintiffs' ability to pay and refusing to take their payments while they continued to add interest, late payments, and other fees to the Plaintiff's [sic] loans."  Doc. no. 1-1 at ¶ 55.  Defendants

_____

available for a negligent misrepresentation claim.  See Frangos, 2017 WL 4876284, at *2 n.2 ("Although plaintiff also alleges damages for emotional distress in relation to his negligent misrepresentation claim, 'plaintiffs cannot recover damages for mental and emotional distress in a claim for negligent misrepresentation.'" (quoting Crowley v. Global Realty, Inc., 124 N.H. 814, 818 (1984)).

[14] In their complaint, plaintiffs attempt to invoke an exception to the economic loss doctrine where a negligent misrepresentation is made by a defendant who is in the business of supplying information.  See doc. no. 1-1 at ¶¶ 38-41; see also Wyle, 162 N.H. at 410 (noting the exception to the economic loss doctrine).  Plaintiffs do not pursue this exception in their objection and it is without merit in any event.  See Schaefer, 731 F.3d at 109 (noting the narrow scope of the exception and holding that it reaches "only those representations . . . that relate to a transaction other than the one that constitutes the subject of the contract").

23

contend that they are entitled to summary judgment because all of their actions were expressly authorized by the mortgage agreement.

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with each other." Birch Broad., Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192, 198 (2010). "The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance." Id. Plaintiffs invoke the third category of the breach of that covenant recognized in New Hampshire: limitation of discretion in contractual performance.

Whether a plaintiff can show a breach of that particular duty

> turns on three key questions: (1) whether the
> agreement allows or confers discretion on the
> defendant to deprive the plaintiff of a substantial
> portion of the benefit of the agreement; (2) whether
> the defendant exercised its discretion reasonably; and
> (3) whether the defendant's abuse of discretion caused
> the damage complained of.

Moore, 848 F. Supp. 2d at 129 (internal quotation marks and citations omitted).

"[T]he duty of good faith and fair dealing ordinarily does not come into play in disputes" where "the underlying contract plainly spells out both the rights and duties of the parties and

the consequences that will follow from a breach of a specified right." Milford-Bennington R. Co., Inc. v. Pan Am Railways, Inc., No. 10-cv-00264-PB, 2011 WL 6300923, at *1 (D.N.H. Dec. 16, 2011) (internal quotations and citations omitted). "'[P]arties generally are bound by the terms of an agreement freely and openly entered into,' and the implied covenant does not preclude a contracting party from insisting on enforcement of the contract by its terms, even when enforcement 'might operate harshly or inequitably.'" Moore, 848 F. Supp. 2d at 129 (quoting Olbres v. Hampton Co-op. Bank, 142 N.H. 227, 233 (1997)). In other words, "a party does not breach the duty of good faith and fair dealing simply by invoking a specific, limited right that is expressly granted by an enforceable contract." Rouleau v. US Bank, N.A., No. 14-cv-568-JL, 2015 WL 1757104, at *5 (D.N.H. Apr. 17, 2015) (internal alterations, quotation marks and citations omitted).

Plaintiffs do not dispute the following: the note obligated them to pay back the amount of the loan secured by the mortgage; their account was in default; and the mortgage agreement allows the lender to add late fees and interest or accelerate the loan in the event of a default.

Nevertheless, plaintiffs assert in their objection that Bank of America had allowed them to remain two months behind on their mortgage payments despite being in default, and had

accepted further payments without adding late fees or accelerating the loan. They argue that Carrington's failure to do the same is sufficient to create a genuine issue of material fact as to whether Carrington breached the implied covenant of good faith and fair dealing in the mortgage agreement.

The mortgage agreement states that "[a]ny forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy." Doc. no. 34-2 at 7. Therefore, under the terms of the mortgage agreement, Bank of America's forbearance by not adding late fees or pursuing foreclosure on plaintiffs' home despite plaintiffs' default did not waive Carrington's right to enforce the mortgage agreement. Plaintiffs have not shown that Carrington's failure to follow Bank of America's practice breached the implied covenant of good faith and fair dealing. See Julius, 2017 WL 1592379, at *3 (noting that a party's default under a mortgage agreement allows a lender or its nominee to pursue any remedy allowed under the agreement and cannot give rise to a claim for breach of the implied covenant of good faith and fair dealing, even where there are "unfortunate circumstances that led to [the] action"); Sharp v. Deutsche Bank Nat'l Tr. Co., No. 14-cv-369-LM, 2015 WL 4771291, at *8 (D.N.H. Aug. 11, 2015) (same); Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-PB, 2012 WL 5845452, at *4 (D.N.H. Nov. 19, 2012) ("Parties are bound by the

agreements they enter into and the court will not use the
implied covenant of good faith and fair dealing to force a party
to rewrite a contract so as to avoid a harsh or inequitable
result.").

Accordingly, defendants are entitled to summary judgment on
Count III.

V.    Violation of the TCPA (Count IV)

Plaintiffs allege in their complaint that Carrington
violated the TCPA, 47 U.S.C. § 227(b)(1)(A), by calling Wenzel
on her cell phone through an automatic or predictive dialing
system without her consent.  Defendants argue that the
uncontroverted evidence in the record shows that Carrington did
not use an automatic or predictive dialing system to call Wenzel
and that, regardless, it had Wenzel's express consent to call
her on her cell phone.

The TCPA makes it unlawful "for any person within the
United States . . . to make any call (other than a call made for
emergency purposes or made with the prior express consent of the
called party) using any automatic telephone dialing system ...
to any telephone number assigned to a . . . cellular telephone
service . . . ."  47 U.S.C. § 227(b)(1)(A)(iii).  "The elements
of a TCPA claim are thus: (1) the defendant called a cellular
telephone; (2) using an [automatic dialing system]; (3) without

27

the recipient's prior express consent." Jones v. FMA All. Ltd., 978 F. Supp. 2d 84, 86 (D. Mass. 2013).

In support of their summary judgment motion, defendants rely on Ostermann's sworn affidavit, in which she states that "[a]t no time relevant to the instant litigation did Carrington use either a predictive dialing system or an automatic telephone dialing system when contacting Plaintiffs." Doc. no. 34 at ¶ 6. Plaintiffs offer no evidence to the contrary, but simply argue that the court should not credit Ostermann's affidavit because it does not describe the telephone system that Carrington used (other than that it was not an automatic or predictive dialing system), and because Ostermann did not explain her training or expertise with regard to being able to ascertain whether the telephone system is automatic or predictive.

Plaintiffs' argument is without merit. Ostermann's sworn affidavit states that Carrington did not use an automatic or predictive dialing system, and plaintiffs provide no contrary evidence. Ostermann is a Vice President for Carrington, and her affidavit states that she is familiar with the facts surrounding plaintiffs' account and that her statements made in the affidavit are based on her personal knowledge. See doc. no. 34 at ¶ 2. In addition, in response to plaintiffs' arguments concerning the insufficiency of Ostermann's affidavit, defendants included with their reply the affidavit of Chris

Lechtanski, an Assistant Vice President for Carrington.[15]  See doc. no. 49.  In his affidavit, Lechtanski states that he has been trained on how Carrington places an outbound call, that he is personally familiar with the process Carrington uses to initiate a phone call to a borrower, and that each outbound telephone call placed to plaintiffs was initiated by a Carrington representative manually dialing the phone number. See id. at ¶¶ 6-8.[16]  Plaintiffs fail to offer anything other than the bare allegations in their complaint to support their TCPA claim, which is insufficient to defeat a properly supported motion for summary judgment.  See Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 152 (1st Cir. 2009) ("At [the summary judgment] stage, the nonmoving party may not rest upon mere allegation or denials . . . but must set forth specific facts showing that there is a genuine issue of material fact . . . ." (internal quotation marks and citation omitted)).

---

[15] Lechtanski's affidavit states that his exact title is "Assistant Vice President, Default."  Doc. no. 49 at ¶ 2.

[16] Plaintiffs contend that the court should not consider Lechtanski's affidavit because it is prejudicial and does not allow them "the opportunity to confront the witness or conduct any follow-up discovery."  Doc. no. 50 at 4-5.  Like Ostermann and Hunt, however, Lechtanski was disclosed as a witness in defendants' October 24, 2017 supplemental disclosures, doc. no. 48-1, and plaintiffs never sought to depose him.  Plaintiffs' argument that the court should exclude Lechtanski's affidavit is unavailing.

For these reasons, defendants are entitled to summary judgment on plaintiffs' TCPA claim in Count IV.[17]

VI.  Violations of the FDCPA (Counts V – VII)

Plaintiffs allege in their complaint that Carrington violated the FDCPA by calling Wenzel's cell phone with the intent to annoy, abuse, or harass her (Count V), and by using obscene language in a voicemail on her cell phone (Count VII). They also allege that both Carrington and National Creditors violated the FDCPA by falsely representing the character, amount, or legal status of plaintiffs' debt (Count VI).

"In order to prevail on an FDCPA claim, a plaintiff must prove that: 1) the plaintiff has been the object of collection activity arising from consumer debt, 2) the defendant is a debt collector as defined by the FDCPA, and 3) the defendant has engaged in an act or omission prohibited by the FDCPA." Forcier v. Creditors Specialty Serv., Inc., No. 13-cv-444-LM, 2014 WL 6473043, at *2 (D.N.H. Nov. 17, 2014) (internal quotation marks and citations omitted).  Defendants do not dispute the first two elements, but argue that the uncontroverted evidence in the

_____

[17] Because the undisputed evidence in the record shows that Carrington did not use an automatic or predictive dialing system, the court need not address defendants' argument that Wenzel consented to being contacted on her cell phone when she provided her cell phone number to Carrington on the July 26, 2016 phone call.

30

record shows that they did not engage in any act or omission prohibited by the FDCPA.

A.    Violation of 15 U.S.C. § 1692d(5) (Count V)

In Count V of their complaint, plaintiffs allege that Carrington violated § 1692d(5) by calling Wenzel on her telephone repeatedly with the intent to annoy, abuse, and harass her.  Section 1692d(5) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

§ 1692d(5).

"Under § 1692d, there are no bright-line rules as to what constitutes harassment or what demonstrates intent to annoy. Instead, such findings have been based on a consideration of multiple factors."  Davis v. Diversified Consultants, Inc., 36 F. Supp. 3d 217, 228 (D. Mass. 2014).  "For example, in determining whether the intent requirement is met, courts often look to the volume, frequency, and persistence of calls, to whether defendant continued to call after plaintiff requested it cease, and to whether plaintiff actually owed the alleged debt." Id. (citing cases).

The evidence in the record shows that Carrington called Wenzel's cell phone seven times between July 28 and October 11, 2016, and never more than once on a single day.  There is no evidence that Wenzel ever answered any of these calls or told Carrington to stop calling.  Plaintiffs do not point to any evidence in the record to support their claim, but argue simply that summary judgment is inappropriate on Count V because genuine issues of material fact exist as to whether Wenzel felt annoyed or harassed by Carrington's phone calls.

Even viewing the facts in the light most favorable to plaintiffs, there is no evidence in the record from which a reasonable jury could infer that Carrington made the calls with the intent to abuse, annoy, or harass Wenzel.  See Carman v. CBE Grp., Inc., 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (granting summary judgment on § 1692d(5) claim where defendant called plaintiff 149 times over two months but never "at odd or unreasonable hours" and never "on the same day within two hours of each other"); Arteaga v. Asset Acceptance, LLC, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010) (granting summary judgment on § 1692d(5) claim where defendant called plaintiff 18 times because plaintiff "presents no evidence that [defendant] called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested [defendant] to cease

calling"); Tucker v. CBE Grp., Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment on § 1692d(5) claim where defendant called plaintiff 57 times because there was no evidence in the record that defendant spoke to plaintiff or that defendant made the calls with the intent to harass plaintiff, rather than simply reach her). Wenzel's opinion about the nature of the calls is not evidence of Carrington's intent. See, e.g., Pugliese v. Prof. Recovery Serv., Inc., No. 09-12262, 2010 WL 2632562, at *9-10 (E.D. Mich. June 29, 2010) (granting summary judgment on plaintiff's § 1692d(5) claim and noting that although plaintiffs may have been annoyed with defendant's calls, there was no evidence that defendant made the calls with the intent to abuse or harass plaintiffs). Therefore, defendants are entitled to summary judgment on Count V.

B.  Violation of 15 U.S.C. § 1692e (Count VI)

In Count VI of their complaint, plaintiffs allege that defendants violated § 1692e by misrepresenting the amount or character of plaintiffs' debt, see § 1692e(2)(a), and attempting to unlawfully collect late fees associated with that debt. The complaint cites National Creditor's August 5, 2016 Debt Validation Notice and Carrington's July 29, 2016 Notice of Foreclosure, both of which plaintiffs attach as exhibits to their complaint.

## 1.  National Creditors

Other than citing the Debt Validation Notice in their complaint, plaintiffs fail to allege the basis of their FDCPA claim against National Creditors, and they do not mention National Creditors with regard to this claim in their objection or surreply.  Therefore, to the extent plaintiffs intended to assert Count VI against National Creditors, defendants are entitled to summary judgment as to that portion of the claim.

## 2.  Carrington

Defendants argue that Carrington's July 29, 2016 Notice of Foreclosure did not violate § 1692e(2).  They note that the Notice of Foreclosure accurately lists $5,502.30 as the amount needed to bring the account current.  They argue that there is no dispute that as of the date Carrington sent the Notice, plaintiffs had failed to make their monthly payments of $1834.10 due on May 1, June 1, and July 1, 2016.  They assert that, therefore, the amount due accurately reflects that plaintiffs were three months in arrears.

In response, plaintiffs do not address defendants' arguments as to the July 29, 2016 Notice of Foreclosure. Instead, they raise two grounds for their § 1692e claim against Carrington: (1) Carrington failed to disclose in its "Notice Pursuant to Fair Debt Collection Practices Act 15 U.S.C. Section

1692, et seq." ("FDCPA Notice"), doc. no. 41-6, that the balance listed may increase due to interest and fees and failed to disclose in its telephone calls that it was a debt collector; and (2) the amount due listed in Carrington's FDCPA Notice ($244,672.23) was incorrect.  The court addresses each in turn.

        a.   <u>Failure to disclose</u>

Plaintiffs' first argument is based on Carrington's alleged failure to provide certain information in its communications with plaintiffs: 1) its failure to disclose in the FDCPA notice that the balance listed may increase and 2) its failure to disclose in its telephone calls that it was a debt collector. Plaintiffs, however, did not plead either of these theories of liability in their complaint.  Further, they failed to assert these theories at any point prior to their objection to defendants' motion for summary judgment.

Plaintiffs attempt to excuse their mistakes in various ways, including that their objection is simply a "more targeted" explanation of their FDCPA claim and that they should be entitled to amend their complaint.  This is not, however, merely a more targeted version of plaintiffs' claim, but instead is an entirely new theory of liability.

A plaintiff may not assert a new theory of liability in an objection to a motion for summary judgment.  See <u>Asociacion de</u>

Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d 42, 53 (1st Cir. 2011) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." (internal quotation marks and citation omitted)); Agri-Mark, Inc. v. Niro, Inc., 233 F. Supp. 2d 200, 207 (D. Mass. 2002) ("It is well-settled that plaintiffs are generally not permitted to raise brand new theories of their case in opposition to a motion for summary judgment, particularly where, as here, they have been given ample latitude to amend their complaint."); Kaechele v. Nova Info. Sys., Inc., No. CIV. 00-313-JD, 2001 WL 1134726, at *5 (D.N.H. Sept. 24, 2001) ("In addition, the Kaecheles cannot amend their complaint by arguments made in opposition to summary judgment."). Defendants are therefore entitled to summary judgment on the portion of plaintiffs' claim in Count VI against Carrington based on its failure to disclose information.

b.   Incorrect Amount of Debt

Plaintiffs next assert that Carrington violated § 1692e(2) by misrepresenting the amount or character of their debt. The

FDCPA Notice lists plaintiffs' debt as $244,672.23. When plaintiffs received that notice, Wenzel called Carrington and stated that she believed that figure was incorrect. The Carrington representative confirmed to Wenzel that the figure listed in the notice was incorrect.

Defendants do not contend that the figure listed in the FDCPA Notice was accurate. Instead, they argue simply that the court should not consider this claim because the complaint cites only Carrington's notice of foreclosure, not the FDCPA Notice. Unlike the theories discussed above, however, plaintiffs raised this theory of liability in their complaint. Although plaintiffs' complaint is not a model of clarity, it alleges that Carrington misrepresented the amount of the debt in its communications. Defendants were aware that plaintiffs challenged the $244,672.23 figure as of July 26, 2016, when Wenzel raised the issue on the phone call with Carrington.

Defendants' motion for summary judgment is therefore denied as to this portion of Count VI.[18]

---

[18] Despite not filing a motion for summary judgment, plaintiffs request in their objection that the court grant them summary judgment on Count VI. To the extent plaintiffs believe they are entitled to summary judgment on this portion of their claim, they have not properly moved for summary judgment. See LR 7.1(a)(1) ("Objections to pending motions and affirmative motions for relief shall not be combined in one filing.").

C.   Violation of 15 U.S.C. § 1692d(2) (Count VII)

In Count VII of their complaint, plaintiffs allege that Carrington violated § 1692d(2) by leaving a voicemail on Wenzel's cell phone that stated "f*ck you."  Section 1692d(2) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

§ 1692d(2).

Defendants included with their motion audio recordings of the only two voicemails Carrington left on Wenzel's cell phone. The first was on August 18, 2016 and lasted approximately three seconds.  The second was on August 19, 2016 and lasted approximately six seconds.  Defendants contend that neither voicemail contains any discernible language, nor can the phrase "f*ck you" be heard.

In support of their claim in Count VII, plaintiffs point to their answers to National Creditor's first set of interrogatories.  See doc. no. 36-2 at 11.  In those answers, plaintiffs assert that "[o]ne of the voicemails that was left during the month of August was silent and then communicated the

message 'f*** you' to the Plaintiffs." Id. In their objection, plaintiffs state that their claim in Count VII is based on the August 18 voicemail. See doc. no. 41 at ¶ 15.

The recording of the August 18 voicemail proffered by defendants appears to contain some language, but it is indecipherable. Plaintiffs point to evidence in the record that the voicemail that was left on Wenzel's cell phone contained the phrase "f*ck you." Because the court cannot determine the contents of the August 18 voicemail based on defendants' proffered recording, and because there is conflicting evidence in the record as to what Carrington communicated in the voicemail, summary judgment is inappropriate. See Epifan v. Roman, No. 3:11-CV-02591-FLW, 2014 WL 4828606, at *13 (D.N.J. Sept. 29, 2014) ("Indeed, what [defendant] requests this Court to do is to discredit Plaintiff's testimony based on an unclear audio recording. This is not permissible on a summary judgment motion because the Court's role is not to make credibility determinations. That is reserved for the factfinder."); Gamble v. Griggs, No. 11-14987, 2013 WL 1296267, at *6 (E.D. Mich. Mar. 28, 2013) (denying defendant's motion for summary judgment based on audio recordings because the "recordings are too unclear for the Court to disregard Plaintiff's factual account as a matter of law").

Accordingly, defendants are not entitled to summary judgment on Count VII.

## VII. Negligent Infliction of Emotional Distress (Count VIII)

Plaintiffs allege in their complaint that Carrington and National Creditors caused them emotional distress through their various actions relating to the collection of their mortgage debt. "The elements of a claim for negligent infliction of emotional distress include: (1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." Tessier v. Rockefeller, 162 N.H. 324, 342 (2011) (internal quotation marks omitted). "'[A] claim for [negligent infliction of emotional distress], like any other negligence claim, demands the existence of a duty from the defendant to the plaintiff.'" Moore, 848 F. Supp. 2d at 135 (quoting BK v. N.H. Dep't of Health & Human Servs., 814 F. Supp. 2d 59, 72 (D.N.H. 2011)).

As discussed above, plaintiffs do not claim that Carrington voluntarily assumed a duty outside of the mortgage agreement and have not shown that a viable claim exists based on allegations of negligence. For these reasons, defendants are entitled to summary judgment on plaintiffs' negligent infliction of emotional distress claim. See Mader, 2017 WL 177619, at *5; Gasparik v. Fed. Nat'l Mortg. Ass'n, No. 16-cv-147-AJ, 2016 WL

7015672, at *4 (D.N.H. Dec. 1, 2016); Bowser v. MTGLQ Inv'rs, LP, No. 15-cv-154-LM, 2015 WL 4771337, at *4 (D.N.H. Aug. 11, 2015); Pruden v. CitiMortgage, Inc., No. 12-cv-452-LM, 2014 WL 2142155, at *19 (D.N.H. May 23, 2014) Moore, 848 F. Supp. 2d at 135.

Although the complaint purports to assert a negligent infliction of emotional distress claim against National Creditors as well as Carrington, plaintiffs do not make any argument as to National Creditors with regard to the claim.  In their objection, plaintiffs refer only to Carrington's conduct. See doc. no. 41 at ¶¶ 61-62.  Even if they had intended to maintain a claim for negligent infliction of emotional distress against National Creditors, that claim would fail.  Plaintiffs do not assert that National Creditors owed them any duty that could give rise to such a claim, and do not explain how the act of sending a Debt Validation Notice caused them any injury.

Accordingly, defendants are entitled to summary judgment on Count VIII.

VIII.  Standing (Count IX)

In Count IX, plaintiffs challenge Carrington's standing to foreclose because it allegedly "acted unlawfully" and may not be able to produce a valid note.  Defendants argue that there is no claim for "standing" under New Hampshire law and that,

regardless, there is no pending foreclosure on plaintiffs' home. In response, plaintiffs appear to concede that Count IX does not state a claim, and assert that it "can be dismissed at this point . . . ." Doc. no. 41 at 16. Plaintiffs' concession is well taken; the claim is dismissed.


**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (doc. no. 32) is granted as to all claims other than Count VII, the portion of plaintiffs' RESPA claim asserted in Count I based on a violation of § 2605(c), and the portion of plaintiffs' FDCPA claim asserted in Count VI based on Carrington's representation of the amount of the debt. National Creditors is dismissed from the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


April 20, 2018

cc: All counsel of record